# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COOKEVILLE DIVISION

ROCKNE SALSBERRY,         )
Plaintiff,                    )
                              )
v.                            )       **Case No. 2:19-cv-00066**
                              )       **Chief Judge Crenshaw / Frensley**
                              )
COMMISSIONER OF SOCIAL     )
SECURITY ADMINISTRATION,    )
Defendant.                )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI"), as provided under Title XVI of the Act.

As a preliminary matter, the Court notes that the Commissioner's decisions at the initial and reconsideration levels of Plaintiff's SSI application are missing from the administrative record, Docket No. 12,[1] filed by Defendant. However, in his complaint, Plaintiff clearly seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) for the denial of both his DIB and his SSI claims. Docket No. 1, pp. 1-2. Defendant answered accordingly. Docket No. 11, pp. 1-2. "Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Because the Court is only considering the findings of the ALJ, and not the decisions at the initial and reconsideration levels, the Court finds the record to be substantively complete so as to allow for meaningful judicial review and will

---

[1] Hereinafter, all references to the Administrative Record will be indicated with "TR," followed by the page number on which the cited material can be found.

conduct same.

The case is currently pending before the Court on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 18. After two Orders to Show Cause why this case should not be dismissed for want of prosecution (Docket Nos. 15, 16), Plaintiff filed the instant motion. Plaintiff has filed an accompanying Memorandum. Docket No. 19. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20.

For the reasons state below, the Magistrate Judge RECOMMENDS that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on May 17, 2017 (TR 250, 264-68, 331-32), and it was received June 2, 2017 (TR 267, 333-39). Plaintiff also protectively applied for SSI on June 6, 2017 (TR 340-45).[2] Plaintiff alleged disability due to uncontrolled blood pressure, heart rate problems, anxiety attack, and high cholesterol (TR 460). Plaintiff's application was denied both initially (TR 250) and upon reconsideration (TR 264).[3] Plaintiff subsequently requested (TR 278-79) and received (TR 204-238) a hearing. Plaintiff's hearing was conducted on September 14, 2018, by Administrative Law Judge ("ALJ") Juliana P. Heaton. TR 204. Plaintiff and vocational expert ("VE"), Robert Strader, appeared and testified.

---

[2] Both the ALJ in her decision and Plaintiff in his brief indicate a protective SSI filing date of January 12, 2018 (*See, e.g.,* Docket No. 19, p. 1; TR 184.); however, there is nothing in the record indicating such a filing date. Plaintiff incorrectly cites the June 6, 2017 application (TR 340-45) as support for the January 12, 2018 application date, and the ALJ gave no reference.

[3] As previously noted, the initial and reconsideration level decisions regarding Plaintiff's SSI application(s) are missing from the record currently before the Court.

2

TR 204-05.

On March 26, 2019, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 181-200. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since April 27, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
   .                                    .                                    .

3. The claimant has the following severe impairments: general anxiety disorder; panic disorder without agoraphobia; hypertension (20 CFR 404.1520(c) and 416.920(c)).
   .                                    .                                    .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.
   . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except avoiding hazards; avoiding interaction with the general public; and occasionally interacting with coworkers; in a setting with occasional changes in the workplace.
   .                                    .                                    .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
   .                                    .                                    .

7. The claimant was born on May 2, 1960 and was 56 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.14564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills

3

(See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

      .                              .                                  .

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 27, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 186-87, 189, 194-95.

On April 8, 2019, Plaintiff timely filed a request for review of the hearing decision. TR 328-330. On June 19, 2019, the Appeals Council issued a letter declining to review the case (TR 1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A.    Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were

4

committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[4] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181

---

[4] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

6

(6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.    Plaintiff's Statement of Errors

Plaintiff contends: (1) the ALJ erred in the RFC determination by posing hypotheticals to the Vocational Expert that failed to properly account for Plaintiff's moderate limitations in concentration, persistence and pace; (2) the ALJ erred in the RFC determination by improperly weighing medical opinion evidence of record considering Plaintiff's moderate limitations in interacting with others; (3) the ALJ erred by not obtaining a reasonable explanation for a conflict

between the Dictionary of Occupational Titles and the Vocational Expert's testimony; and (4) the ALJ failed to address Plaintiff's medical impairments of his hip, knee, and shoulder, and thereby reversibly erred by not finding all of Plaintiff's impairments to be severe. Docket No. 19, pp. 13-19. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.* at 19.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

### 1.     Plaintiff's Residual Functional Capacity and Improper Hypotheticals

First, Plaintiff avers that the ALJ's Residual Functional Capacity ("RFC") assessment is deficient because the ALJ improperly accounted for Plaintiff's moderate limitations in concentrating, persisting or maintaining pace found at step three of the sequential evaluation process. Docket No. 19, pp. 13-14; TR 188.

Plaintiff argues that "the ALJ failed to explain why in her RFC she was not including any

limitations regarding the ability to perform even simple work on a sustained basis." Docket No. 19, p. 14. He contends that the ALJ did not include a limitation in the RFC assessment corresponding to his moderate difficulties in concentration, persistence or pace, and that if the ALJ failed to account for the moderate limitation, the ALJ's reliance on vocational expert testimony regarding other jobs Plaintiff could perform in the national economy is misplaced. *Id.*

Defendant responds that "there is not a direct correlation between the findings at step three (moderate) and the residual functional capacity used at steps four and five of the sequential evaluation process." Docket No. 20, p. 5. Specifically, Defendant argues that Plaintiff's moderate limitations in concentration, persistence or pace do not necessitate specific limitations in the RFC assessment. *Id.*

Determining a claimant's limitations for purposes of establishing an RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).

With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

9

20 C.F.R. § 404.1545(b).

However, assessment of a claimant's RFC does not occur unless, as the ALJ determined here, the claimant's impairments do not meet or medically equal an impairment listed in 20 CFR § 404, Subpt. P, App. 1. At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a *de minimis* hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations, rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 310-cv-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

In the case at bar, the ALJ at step two found Plaintiff's severe impairments to be general anxiety disorder, panic disorder without agoraphobia; and hypertension. TR 187. The ALJ went

on to conclude that these severe impairments did not meet or medically equal one of the listed impairments at step three. *Id.* Specifically, the ALJ found that "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06. In making this finding, the [ALJ] has considered whether the 'paragraph B' criteria are satisfied." TR 187. The ALJ went on to explain:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments.

TR 189.

The ALJ made the following findings regarding Plaintiff's limitations, substantially supporting each with the medical records entered into evidence without objection at the hearing. TR 207-08.

> In the domain of understanding, remembering, or applying information, the claimant has no more than **moderate** limitations. The overall record shows that despite some short-term memory problems and problems with concentration largely related to anxiety and excessive rumination over numerous psychosocial stressors, the claimant is still able to understand, remember, and carry out *at least* simple, routine, repetitive, rote tasks without significant difficulty. In his function report, the claimant related that he cared for his pets daily, giving them water, food, and distributing medications (Exhibit 10E). He maintained that he had no problems performing personal care or handling and taking his own medications. The claimant reported that he prepared meals daily; and he was able to perform all household chores (including yard work) unless he experienced a panic attack. (exhibit 10E).

> In the domain of interacting with others, the claimant has **moderate** limitations insofar as the record shows that he retains at least *some* capacity to interact appropriately and communicate effectively with others. He reportedly uses natural supports, including family, and initiates appropriate interaction with others within expected social, developmental, and cultural norms when engaged. The claimant stated he shopped in stores for groceries (Exhibit 10E). The claimant stated he visited with others by phone, in person, and using the computer. He asserted that he and his wife visited frequently his mother-in-law who lived in Alabama. The

11

claimant said he required someone to accompany him when he went outside because he feared he might have a panic attack. The claimant stated that he got along well with authority figures.

With regard to concentration, persisting, or maintaining pace, the claimant has **_moderate_** limitations insofar as the record supports that his concentration skills still allow for the completion of at least *some* assigned tasks. For instance, he reported that he shopped in stores for groceries; and he maintained he took care of all financial matters, such as paying bills, counting change, handling a savings account, and using a checkbook and money orders (Exhibit 10E/4). By virtue of his reported abilities to shop in stores for food and cook, he has demonstrated the capacity to perform successfully *at least* simple, routine, one- to two-step tasks.

As for adapting or managing oneself, the claimant has experienced no more than **_moderate_** limitations as the overall record fails to show any evidence of serious deficits in adaptation or daily functioning. More specifically, the claimant reported he was still independent in his personal care and hygiene; that he is still able to perform at least simple household chores (*e.g.*, doing laundry, cooking, cleaning the house; and mowing the yard; and that he is otherwise still capable of managing money, driving, going fishing every couple of weeks; and grocery shopping (Exhibit 10E).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

TR 187-88 (all emphasis in original).

It is on two of the "moderate limitation" findings above that Plaintiff maintains the ALJ erred in her RFC assessment and, ultimately, in her conclusion at step five. The ALJ made the following RFC assessment:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except avoiding hazards; avoiding interaction with the general public; and occasionally interacting with coworkers; in a setting with occasional changes in the workplace.

TR 189.

Moreover, in her analysis of other potential jobs in the national economy, the ALJ posed several hypothetical questions to the vocational expert at the hearing in which it is evident the ALJ considered both Plaintiff's moderate limitations in concentration, persistence and pace, and

12

Plaintiff's moderate limitations in interacting with others. At the hearing, the ALJ asked the following:

> Q [ALJ]: For my first hypothetical, assume an individual the claimant's age, education, and wok [sic] experience who can perform medium work; avoiding hazards; avoiding interaction with the general public; occasionally interacting with coworkers in a setting with occasional changes in the workplace. Would that individual be able to perform any of the claimant's past work?

> A [VE]: No, ma'am.

> Q [ALJ]: Would there be other jobs in the national economy such an individual could perform?

> A [VE]: Sure, in the medium category, I would think we'd have a packer; DOT for a packer is 920.587-018; SVP of 2; approximately 41,000 nationally. A dishwasher; dishwasher is 318.687-010; SVP of 2; approximately 280,500 nationally. Industrial cleaner; somebody that works at nighttime mostly. Industrial cleaner, the DOT for that is 381.687-018; SVP of 2; approximately 11,600 nationally.

> Q [ALJ]: For hypothetical number two, add that the individual must avoid kneeling and can frequently but not constantly reach with the non-dominant left upper extremity. Would there be jobs in the national economy that individual could perform?
> . . .

> A [VE]: Yeah, I would think that the packer would avoid kneeling. That would conform. The dishwasher I think would conform. And I think the industrial cleaner would conform with the second hypothetical.

> Q [ALJ]: For hypothetical number three, the individual can perform simple and detailed tasks and in a setting where changes in workplace are infrequent. Would there be jobs in the national economy that individual could perform?

> A [VE]: The three jobs I've given you would conform to that third hypothetical.

> Q [ALJ]: For hypothetical number four, add that the individual could only occasionally interact with supervisors. Would there be jobs in the national economy that individual could perform?

> A [VE]: The three jobs I've given you would conform to that.

> Q [ALJ]: For hypothetical number five, the changes that the individual could

13

interact with coworkers and supervisors on a superficial bases and this could occur – would occur less than occasionally so less than one-third of the workday, would there be jobs in the national economy that individual could perform?

A [VE]:      I would think the three jobs I've given you would conform to that.

Q [ALJ]:      Would there be transferrable skills to work at the light level of exertional from the claimant's past relevant work?

A [VE]:      I would say no.

Q [ALJ]:      Okay.

TR 235-37.

The ALJ subsequently determined that jobs exist in significant numbers in the national economy that the claimant can perform such that a finding of "not disabled" was warranted. TR 194.

> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.22. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled occupations such packer [sic] (DOT 920.587-018), SVP 2, with 41,000 such jobs in the national economy; dishwasher (DOT 318.687-010), SVP 2, with 280,500 such jobs; and industrial cleaner (DOT 381.687-018), SVP 2, with 11,600 such jobs in the national economy.

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

TR 194-95.

14

As can be seen, the ALJ addressed Plaintiff's moderate limitations at the appropriate time in the sequential evaluation process, and incorporated those limitations appropriately into the RFC assessment. The ALJ properly evaluated the evidence in reaching this RFC determination, and the regulations do not require more. Because substantial evidence supports the ALJ's determination at the RFC assessment, the ALJ's decision must stand.

## 2. Plaintiff's Residual Functional Capacity and Medical Opinion Evidence

Plaintiff avers that the ALJ's RFC assessment is deficient because the ALJ improperly accounted for Plaintiff's moderate limitations in interacting with others found at step three of the sequential evaluation process. Docket No. 19, p. 15; TR 188.

As an initial matter, the Sixth Circuit has made clear that a court is not obligated on judicial review to formulate arguments on a plaintiff's behalf. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014), *citing United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (citation omitted) (internal quotations omitted). "Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* (internal quotations and citations omitted).

Plaintiff devotes two paragraphs of his brief to this issue without incorporating other arguments by reference or citing legal authority, leaving the argument largely undeveloped. Accordingly, this argument is deemed waived.

In any event, however, Plaintiff's claim comes up short on the merits. Plaintiff argues that the ALJ inadequately accounted for his moderate limitations in interacting with others when assessing his RFC, pointing to the report submitted by a reviewing psychologist that was found

15

persuasive by the ALJ, and drawing a distinction between "superficial contact with **coworkers and supervisors**" (TR 192, emphasis added) and "occasionally interacting with **coworkers**" (TR 189, emphasis added). Docket No. 19, p. 15.

Defendant argues the ALJ's evaluation of the psychologist's report was proper under the current regulatory definition of "medical opinion," and that Plaintiff's argument regarding the ALJ's limitation of only "occasionally interacting with **coworkers**" based on the expert report recommending only "superficial contact with **coworkers and supervisors**" is a distinction without a difference. Docket No. 20, pp. 5-7. Defendant alternatively argues that even if the ALJ erred in failing to specifically address Plaintiff's limitations in concentration, persistence or pace, and interacting with supervisors, the error was harmless, as Plaintiff could still perform the jobs that were identified at the hearing. *Id.* at 9.

In the RFC assessment, the ALJ considered medical records from: Volunteer Behavioral Health Care System (TR 481-536, 613-75, 1211-1372, 1375-1417); Satellite Med (TR 1024-29, 1167-1204, 1418-1504); Clear Lake Regional Medical Center (TR 601-12, 1030-1139); Cookeville Regional Medical Center (TR 1140-66); Tennessee Heart, PLLC (TR 1205-10); and the Alvin C. York VAMC (TR 1505-91).

The ALJ also considered the medical opinion evidence in the record. (*See* TR 192-93). With regard to the evaluation of medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017, the new Regulations provide as follows:

> **(a)     How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate

16

the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph(c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section)....

**(b)      How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

>   **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

>   **(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

>   **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same,

we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c)     Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

> **(1) Supportability.** The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> **(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

> **(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

>> **(i)  Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

>> **(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

>> **(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

>> **(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

18

(v) **Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) **Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) **Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

(d) **Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 CFR § 404.1520c.

In her RFC assessment, the ALJ found persuasive the opinions of M. Candice Burger, Ph.D. (TR 239-49); Thomas Thrush, M.D. (TR 251-63); M. Duncan Currey, Ph.D. (TR 251-63); but did not find persuasive the opinions of Michael Ryan, M.D. (TR 239-49); Dr. Fox (TR 479-80); or Veteran's Affairs (TR 1373-74). TR 192-93.

Specifically, with respect to the opinion of M. Duncan Currey, Ph.D., the ALJ found as follows.

The Administrative Law Judge finds persuasive the October 2017 opinion of Dr. Currey regarding a severe anxiety disorder and moderate "B" criteria that are supported by the opinion of Dr. Burger (Exhibits 1A and 3A). Dr. Currey's mental

19

assessment is persuasive except for the part about infrequent, superficial contact with coworkers and supervisors because the decisional residual functional capacity restricts the claimant to no interaction with the public and occasional interaction with coworkers. The decisional residual functional capacity accommodates the severe mental impairments and is supported and consistent with the record as a whole. The undersigned finds the mild and very mild limitations of mental impairment assessed by the Veterans Administration is not consistent with the medical evidence of record and the decisional residual functional capacity.

TR 192.

The foregoing reveals that, contrary to Plaintiff's contention, the ALJ properly considered the opinion of Dr. Currey in crafting the RFC in this case. As Defendant points out, "there is no inconsistency between the report from Dr. Currey and the ALJ's findings, which differ only in their phrasing." Docket No. 20, p. 8. Because substantial evidence supports both the ALJ's RFC determination and the ALJ's consideration of medical opinion evidence, the ALJ's decision must stand. Accordingly, Plaintiff's claim fails on the merits.

### 3. Consistency Between Vocational Expert Testimony and Dictionary of Occupational Titles

Next, Plaintiff argues that the ALJ failed to resolve a conflict between the testimony of the vocational expert and the dictionary of occupational titles ("DOT"). Docket No. 19, p. 16. For support, Plaintiff points to a single exchange near the end of the hearing between the ALJ and vocational expert ("VE"). *Id.*

Q [ALJ]: Mr. Strader, was your testimony consistent with the Dictionary of Occupational Titles?

A [VE]: As well as my education, training, and experience, yes, ma'am.

TR 237.

Plaintiff contends that this exchange did not fully discharge the ALJ's duty under SSR 00-4p to "identify and obtain a reasonable explanation for any conflicts" between the DOT and testimony of the vocational expert. Docket No. 19, p. 16. Specifically, Plaintiff avers that because

the ALJ did not know which portions of the VE's testimony were based on his "education training and experience" and which were based on the Dictionary of Occupational Titles, a conflict arose that was insufficiently resolved. *Id.*

Defendant responds that "Plaintiff's argument identifies no errors in the testimony and no conflict between the requirements of the jobs identified and the requirements listed in the DOT." Docket No. 20, p. 11. Defendant argues that there was no conflict between the DOT and the VE's testimony, and therefore, because there was no conflict, the ALJ was not required to seek an explanation in order to satisfy the requirements of SSR 00-4p. *Id.* Defendant also states that Plaintiff has not identified any other conflict. *Id.*

"All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict*." O'Neal v. Comm'r of Soc. Sec.*, 2020 WL 97414 at \*4 (6th Cir. 2020); *see also Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 508 (6th Cir. 2013); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006).

Here, the ALJ specifically stated in her decision that "pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." TR 195. It is apparent from the hearing transcript and ALJ's decision that no conflict existed. Accordingly, Plaintiff's argument fails.

### 4. Failure to Address All of Plaintiff's Medical Impairments and the ALJ's Severity Findings

Lastly, Plaintiff contends the ALJ erred by not addressing his physical impairments in his hip, knee, and shoulder. Docket No. 19, pp. 17-18. Plaintiff maintains that the ALJ made no

findings with respect to the physical impairments, and thus the ALJ's decision should be reversed. *Id.*

Defendant responds that Plaintiff never alleged disability based on these alleged impairments. Thus, the ALJ was under no obligation to consider the related evidence. Docket No. 20, p. 12. Defendant also argues that Plaintiff does not establish that the ALJ's residual functional capacity assessment would differ had the impairments of the hip, knee, and shoulder been considered more robustly. *Id.* at 13. Hence, Defendant argues alternatively that, even if the physical impairments should have been considered, failing to do so amounts to harmless error. *Id.*

Plaintiff applied for disability in June 2017 (TR 333-39), alleging disability based on anxiety attack, uncontrolled blood pressure, high cholesterol, and heart rate problems (*See* TR 460). He never alleged disability based on impairments in his hip, knee, or shoulder. However, following his hearing, Plaintiff provided medical records and additional evidence to support these contentions. TR 1505-91. The ALJ agreed to consider the records in her final report. TR 207. This was confirmed in a colloquy with Plaintiff's attorney at the hearing:

> Q [ALJ]: Is there any new or outstanding evidence?
>
> A[ATTY]: Your Honor, there actually appears to be some outstanding evidence. Mr. Salsberry recently has been able to get treatment through the VA and in August, they did some x-rays of his right knee and his left shoulder. Those – in reviewing – we got the records through August 7 from the VA and those radiology reports are missing from those records and we would like an opportunity to request those records. I don't know if they hadn't made it into the system or if his – the treatment was just a couple of days after they sent it, but those records are missing.
>
> Q [ALJ]: Okay. Do you think 21 days?
>
> A[ATTY]: Your Honor, I think so. The VA is pretty prompt in sending their records.
>
> Q [ALJ]: Okay. Okay. We'll hold the record for 21 days for those.
>
> A[ATTY]: Thank you, Your Honor.

22

TR 207.

The ALJ also closed the hearing by saying, "let's get the additional x-rays and go from there." TR 238.

Plaintiff argues the ALJ did not address his hip, knee, and shoulder impairments. Docket No. 19, p. 18. For support, Plaintiff cites voluminous medical records submitted to the ALJ for consideration, including examinations and reports completed after the hearing. *Id.*; *See, generally,* TR 1566-91, 1592-1612.

In response, Defendant argues that Plaintiff alleged disability based only on anxiety, high blood pressure, high cholesterol, and heart rate problems. Docket No. 20, p. 12. *See, generally,* TR 460, 396, 401, 427, 440, 441, 44).

The ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. *Williams v. Soc. Sec. Admin.*, No. 3:13-cv-1417, 2017 WL 1410799 at *10 (M.D. Tenn. 2017) (quotations omitted) (citing *Pena v. Chafer*, 76 F.3d 906, 909 (8th Cir. 1996)); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).

While Plaintiff did not allege the impairments in his hip, knee, and shoulder as a basis for disability, he did discuss them on direct examination at the hearing. *See, generally,* TR 224-25, 229-31. This is the closest Plaintiff came to alleging the physical impairments in his hip, knee, and shoulder as a basis for disability. The ALJ accounted for Plaintiff's physical impairments in her hypothetical questions posed to the vocational expert (reproduced above). "For hypothetical number two, add that the individual must avoid kneeling and can frequently but not constantly reach with the non-dominant left upper extremity." TR 236. As can be seen, despite the fact that Plaintiff never alleged impairments of the hip, knee, and shoulder as a basis for disability, the ALJ

23

still considered such impairments, and incorporated them into her analysis of whether appropriate jobs would be available to Plaintiff.

Additionally, that the ALJ did not classify Plaintiff's hip, knee, and shoulder impairments as "severe" does not constitute reversible error. "At step two of the sequential evaluation process, a plaintiff bears the burden of showing that a medically determinable impairment is severe and meets the twelve month durational requirement of the Act." *Barnett-Waggoner v. Soc. Sec. Admin.*, No. 3:18-cv-00366, 2019 WL 1749136 at *7 (M.D. Tenn. 2019); *see also Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec. of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat*, 359 F. App'x at 577. Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations, rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 310-cv-502, 2012 WL 529587 at *4 (E.D. Tenn. 2012).

Here, the ALJ found the Plaintiff has the severe impairments of general anxiety disorder, panic disorder without agoraphobia, and hypertension. TR 187. The ALJ went on to complete the sequential evaluation process, and concluded Plaintiff retained the residual functional capacity to perform medium work and Plaintiff could perform a significant number of jobs existing in the national economy. TR 194. Thus, the ALJ's failure to specifically determine whether Plaintiff's hip, knee, and shoulder impairments were severe or nonsevere does not constitute reversible error; therefore, Plaintiff's argument fails.

24

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**